**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-02470-TC

---

SANDSCHERMA SCHOWGUROW,

*Plaintiff*

v.

NORSTAN COMMUNICATIONS, INC.,

*Defendant*

---

**MEMORANDUM AND ORDER**

Sandscherma Schowgurow sued her former employer Norstan Communications, Inc., d/b/a Black Box Networking Services, asserting that Black Box terminated her because of her disability in violation of the Americans with Disabilities Act, as amended (ADAAA), 42 U.S.C. § 12101 *et seq*. Doc. 1. Black Box moved for summary judgment. Doc. 34. For the following reasons, Black Box's motion is denied.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

In November 2022, Black Box terminated eighty-two employees as part of a reduction in force. Doc. 37 at ¶¶ 45–47.[1] Plaintiff Sandscherma Schowgurow contends she was included in the group of individuals selected for termination because of her disability. Doc. 37. The summary judgment record establishes the following factual background.

In November 2021, Black Box hired Schowgurow to be a Wireless Project Manager in its "5G Business Unit." Doc. 33 at ¶ 2.a.i.; Doc. 37 at ¶ 1. The 5G Business Unit "was primarily engaged in design and deployment of services to supplement wireless and cellular coverage inside buildings." Doc. 37 at ¶ 2. Schowgurow held her project manager position until Black Box terminated her on January 13, 2023. Doc. 33 at ¶ 2.a.x. While she worked for Black Box, Schowgurow worked remotely from her home in Overland Park, Kansas. *Id.* at ¶ 2.a.iii. Schowgurow's duties included "site survey, design, procurement, installation, testing/commissioning, and integration." *Id.* at ¶ 2.a.ii. She reported to John Glover until June 2022 when she began reporting to

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF. All facts are uncontroverted unless otherwise specified.

2

Richard Tellez. *Id.* at ¶¶ 2.a.iv, vi. Tellez reported directly to Operations Director Martin Smith. *Id.* at ¶ 2.a.vii.

Schowgurow traveled to client sites twice during her employment with Black Box. Doc. 33 at ¶ 2.a.v. Those visits occurred in January 2022 and February 2022. *Id.* There were also times when Schowgurow declined to travel to client sites. In June 2022, Schowgurow did not go on a trip to Tennessee because of her back. Doc. 37 at ¶ 26. She texted Tellez from the doctor's office to inform him that she was receiving an injection. Doc. 33 at ¶ 2.a.viii. Then, in September 2022, Schowgurow did not go on a trip to Alabama because she tested positive for COVID-19. Doc. 37 at ¶ 27. One month later, Tellez asked Schowgurow to travel to Tennessee. *Id.* at ¶ 29. Schowgurow told Tellez, "I'd like to go but I can't." *Id.* at ¶ 31. The parties disagree on what language Schowgurow used to explain her reason for not going, but they agree that she did not go because of her back condition. *Id.* at ¶ 29. Tellez "never expressed any dissatisfaction with Plaintiff's inability to travel to work sites." *Id.* at ¶ 102.

In November 2022, Black Box decided to reduce its workforce by 10%. Doc. 37 at ¶ 45. Black Box did not create "corporate-wide criteria or guidance on how to achieve the reduction." *Id.* at ¶ 46. Tellez heard about the reduction in force in mid-December 2022. *Id.* at ¶ 118. Smith asked Tellez to identify individuals that he "could potentially do without." *Id.* at ¶ 48. Within a week, Tellez recommended Schowgurow, and Smith ultimately approved his selection. *Id.* at ¶¶ 51, 57.

Also in mid-December, Schowgurow updated Tellez on her back condition. Specifically, she told Tellez that "she did not require back surgery and she would only need steroid injections." Doc. 37 at ¶ 83.

On January 13, 2023, Tellez and Eric Brinson, Black Box's Senior Human Resources Business Partner Leader, informed Schowgurow that she was being terminated. Doc. 33 at ¶ 2.a.x. During the call, Tellez and Brinson stated that Schowgurow was terminated because she was "not going to customer sites" and because of the reduction in force. Doc. 37 at ¶ 62.

Schowgurow timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Doc. 33 at ¶ 2.a.xii. The EEOC issued Schowgurow a Notice of Right to Sue, and within ninety days, Schowgurow filed this lawsuit. *Id.* at ¶¶ 2.a.xiii–xiv.

3

Schowgurow contends that Black Box terminated her because of her disability in violation of the ADAAA. Doc. 33 at 7.

## II

There is a genuine dispute of material fact as to whether Black Box terminated Schowgurow because of her disability. As a result, Black Box's motion for summary judgment is denied.

## A

Schowgurow contends that she was unlawfully terminated because of her disability. Doc. 1. Lacking any direct evidence of intentional discrimination, she relies on circumstantial evidence to support her claims.[2]

An ADAAA discrimination claim based on circumstantial evidence proceeds through the *McDonnell Douglas* burden-shifting framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 1191–92. If he or she does so, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for taking its adverse action. *Id.* at 1193. If the defendant satisfies its burden, the burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were pretextual—*i.e.*, "not the true reason for its employment decision." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

**1.** The first issue to consider is whether Schowgurow has shown a prima facie case of disability discrimination. She has.

The prima facie case for discrimination requires a plaintiff to show that she is disabled under the statute, qualified for the job, and that the discriminatory conduct was because of her disability. *DePaula*, 859 F.3d at 970 (citing *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218–19 (10th Cir. 2016)). Black Box does not dispute that Schowgurow is disabled as that term is defined by the ADAAA. Doc. 35 at 12. Black Box

---

[2] Neither party contends there is any direct evidence of discrimination, and each analyzes Schowgurow's claims under the *McDonnell Douglas* test. *See* Doc. 35 at 11–12; Doc. 37 at 27–28.

4

instead makes two arguments. First, it argues that "Plaintiff did not or could not perform the essential functions of her job," that is to "travel to client sites." *Id.* at 12. Second, it argues that there is no evidence to give rise to the inference of disability discrimination. *Id.* at 13 (noting Schowgurow had been doing a good job and was just selected to be part of a reduction in force). Neither is sufficient at this stage of the proceedings.

A person is qualified when he or she can "perform the essential functions of the employment position" with or without a "reasonable accommodation." 42 U.S.C. § 12111(8); *see also Aubrey v. Koppes*, 975 F.3d 995, 1006 (10th Cir. 2020). Viewed in the light most favorable to Schowgurow, travel was not an essential function of the Project Manager position. But even if it were, Schowgurow has produced sufficient evidence showing that she is qualified to travel.

Black Box asserts that travel is an essential function of the Project Manager position. Doc. 35 at 11–12. Schowgurow's supervisor, Tellez, explained that this is because it allows Project Managers to "confirm that equipment was installed and connected and ready to be tested by an engineer," "establish a relationship with the client's project manager, crew, and general contractor," and "improve the Project Managers' knowledge of the system." Doc. 35 at ¶ 7. That assertion receives substantial deference. *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 885 (10th Cir. 2015) (explaining that an employer's judgment concerning essential functions is entitled to deference).

But Black Box's own arguments undermine this assertion. Black Box emphasizes that it had no concerns with Schowgurow's performance and only terminated her because of the reduction in force. Doc. 35 at ¶ 50. That Schowgurow was performing satisfactorily—despite her lack of travel—suggests that travel was not truly an essential function of the Project Manager position. *See Walkingstick Dixon v. Okla. ex rel. Regional Univ. Sys. of Okla. Bd. of Regents*, --- F.4th ---, 2025 WL 85495, at *9 (10th Cir. 2025) (finding that an employee with satisfactory performance was qualified to fulfill the essential functions of a job); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1191–92 (10th Cir. 2003) (rejecting that a job function was essential when employees could successfully fill the position without being able to perform that requirement).

Even if travel were an essential function, Schowgurow has evidence that she could comply going forward. Schowgurow traveled to

5

client sites twice during her employment. Doc. 33 at ¶ 2.a.v. She declined to travel twice because of her back condition but had also explained ten days before she was terminated that her treatment made her "willing and able to travel in December and January." Doc. 37 at 32. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1147 (10th Cir. 2011) (concluding that an employee was qualified because he was capable of performing the job functions and had, in fact, performed the function at issue). Black Box's arguments concern how much Schowgurow had travelled, not whether she could. *See* Doc. 35 at 12–13. These arguments are better considered when Black Box proffers its legitimate non-discriminatory reasons for terminating Schowgurow rather than Schowgurow's prima facie case. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (finding that a defendant "cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action"); *Ellison v. Sandia Nat'l Lab'ys*, 60 F. App'x 203, 205 (10th Cir. 2003) (explaining that evidence that an employee's work performance has declined should not be considered when determining whether the employee was qualified to hold the position).

There is also evidence, viewing the facts in the light most favorable to Schowgurow, that Black Box selected her for termination because of her back condition and not due to travel. Black Box argues, without legal authority, that Schowgurow cannot meet this element because it had to eliminate one employee in her unit as part of a reduction in force. Doc. 35 at 13. Without more, this argument fails. An employee who is terminated as part of a reduction in force can still show a prima facie case under the *McDonnell Douglas* framework by showing "some evidence that the employer intended to discriminate against the plaintiff in reaching its RIF decision." *Juarez v. ACS Gov. Sols. Grp., Inc.*, 314 F.3d 1243, 1245–46 (10th Cir. 2003); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1167–68 (10th Cir. 1998) (clarifying that a reduction in force "does not in itself legitimate the employer's choice" nor does it require a "higher quantum of proof" at the prima facie stage).

Schowgurow has produced evidence sufficient to meet her prima facie burden. But that evidence substantially overlaps with the evidence supporting the pretext prong of the *McDonnell Douglas* analysis. For that reason, Schowgurow's arguments supporting the third prong of her prima facie case—whether the circumstances of her termination give rise to an inference of discrimination—will be more fully explored in the pretext analysis set forth below. *See Bolton v. Sprint/United Mgmt.*

*Co.*, 220 F. App'x 761, 767 (10th Cir. 2007) (assuming that the plaintiff met the fourth element of a prima facie case of discrimination and reviewing the arguments in the pretext analysis instead because the pretext analysis encompassed the same evidence).

**2.** The burden then shifts to Black Box to provide a legitimate, non-discriminatory reason for its decision. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1193 (10th Cir. 2018). The burden to establish a legitimate, nondiscriminatory reason is "exceedingly light." *DePaula*, 859 F.3d at 970. On a motion for summary judgment, a defendant need only "articulate a reason for the [action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotations omitted). It "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Black Box has met that burden. Black Box states that it decided to terminate Schowgurow as part of a reduction in force based on her refusal to travel and her geographic distance from client sites. Doc. 35 at ¶ 51. This reason is not facially discriminatory, and it is "reasonably specific and clear." *Frappied*, 966 F.3d at 1058 (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 n.4 (10th Cir. 1992)).

**3.** The burden then shifts back to Schowgurow to show that Black Box's stated reason for terminating her was pretext for discrimination. *See Lincoln*, 900 F.3d at 1193. A plaintiff "may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision." *Id.* (quoting *DePaula*, 859 F.3d at 970). In other words, a plaintiff may show that the defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [it is] unworthy of belief." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1039 (10th Cir. 2011); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).

Pretext probes the true intentions of the defendant, so the focus is limited to "whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007). A court's role "is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Dewitt v. S.W. Bell Tele. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250

(10th Cir. 2006)). All facts are examined "as they appear *to the person making the decision*, not as they appear to the plaintiff." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation and internal quotations omitted) (emphasis in original). Any doubts concerning pretext are resolved in the plaintiff's favor, but conjecture and bare allegations are not enough to show pretext. *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007). Where a RIF is at play, a plaintiff will usually establish pretext by showing that his or her termination does not accord with the RIF criteria employed, the RIF criteria were deliberately falsified or manipulated to secure the plaintiff's termination, or the RIF was more generally pretextual. *See Beaird*, 145 F.3d at 1168.

Schowgurow identifies several facts that she contends would permit a jury to find pretext. Doc. 37 at 36–40. She asserts that she received shifting explanations for the decision, that Black Box hired other Project Managers in the 5G Unit during the same time period it terminated her, that she was treated differently than non-disabled employees, that the temporal proximity between her failure to travel because of her back and her termination suggests pretext, and that she did not receive any warnings about her lack of travel. *Id.*

Some of these reasons, especially when viewed in isolation, are innocuous and might fall within the core meaning of business judgment. Take Tellez's decision to use geographic distance to work sites and the ability to travel to work sites as the criteria for his selection of who to terminate, for example. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1199–1200 (10th Cir. 2008) (finding that objective criteria assessed in non-discriminatory terms suggests that a reduction in force decision is lawful). The same can be said about the absence of warnings that Schowgurow received regarding her lack of travel. *See Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1291 (10th Cir. 2013) (explaining that dismissal without prior discipline does not establish pretext).

Viewing those facts in isolation is inappropriate because other facts, when viewed cumulatively, raise an inference of pretext. For example, it is undisputed that Schowgurow declined to travel to a client site in October 2022 because of her back condition and that she was selected for the reduction in force in December 2022. Doc. 37 at ¶¶ 29, 51, 57, 118; *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206–07 (10th Cir. 2000) (finding that when combined with other evidence, temporal proximity created a material issue of fact as to pretext).

8

There is more. Viewed in the light most favorable to Schowgurow, the evidence suggests that Black Box did not, in fact, eliminate Schowgurow's position. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1194 (10th Cir. 2006) (explaining that an employment discrimination plaintiff in a RIF case may show pretext by presenting evidence that the plaintiff's position was not actually eliminated). Schowgurow argues that Black Box hired one or more Project Managers shortly after she was terminated. Doc. 37 at ¶ 126. And the record supports her claim: Andrew Inks started working for Black Box as a Project Manager in the 5G Unit on January 3, 2023—ten days before Schowgurow was terminated. Doc. 37 at ¶ 126; Doc. 38 at ¶ 126. That timing does not defeat Schowgurow's claim. *Contra* Doc. 38 at ¶ 126. Even though Schowgurow was not officially terminated until January 13, 2023, Tellez selected Showgurow for termination a month earlier in mid-December. Doc. 37 at ¶ 118. As a result, Schowgurow has raised a genuine issue of material fact as to whether her position was filled by Inks instead of being eliminated in Black Box's reduction in force. *See Beaird*, 145 F.3d at 1171–72 (finding that employees terminated as part of a RIF who were replaced by new employees raised a genuine issue of material fact sufficient to find pretext).

Black Box has not produced sufficient evidence to disprove this. It attempts to do so by asserting that Inks was hired "because he lived in Northern California, where the 5G Business Unit was specifically looking for a Project Manager." Doc. 38 at ¶ 126. A jury may agree that Inks was not hired to replace Schowgurow. But Black Box conceded that absent the reduction in force, it did not have concerns about Schowgurow's geographic location. Doc. 35 at ¶ 50. It simply used geography and/or travel as a criterion for the reduction in force. Black Box cannot defeat Schowgurow's assertion that the reduction in force was pretextual by suggesting that reasons other than the reduction in force warranted her termination.

In addition, Black Box offered shifting justifications for its decision. Doc. 37 at 34–36. Tellez, who selected Schowgurow for the reduction in force, testified that the only criteria he considered was the ability to travel and whether an employee lives near a client site. Doc. 37 at ¶ 133. He made the recommendation to Smith, who testified that Tellez's reasons for selecting Schowgurow were her inability to travel and her tenure at Black Box. Doc. 37 at ¶ 139. This matters because Schowgurow has produced evidence showing that two other Project Managers reporting to Tellez had less tenure at the company than

9

Schowgurow, but Tellez only considered Schowgurow for the reduction in force. Doc. 37 at ¶¶ 128, 141. Schowgurow has created a genuine issue of material fact as to whether tenure was a factor in her termination and whether Schowgurow's tenure as a Project Manager, as compared to other employees, shows that Black Box's stated reasons for terminating Schowgurow are pretextual. *Beaird*, 145 F.3d at 1167 (explaining that a plaintiff may show pretext in the reduction in force context by showing "that the employer could have retained her" but retained other employees instead). Maybe Smith's testimony was simply a mistake, or he misremembered. But given the totality of the evidence, that is a dispute for a jury to decide. *See Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005) (finding indication of pretext where employer offers inconsistent reasons for termination); *see also Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996) (same).

And finally, there is evidence that Black Box's decision was based on conduct directly attributable to the disability Black Box assumes Schowgurow had. Although the ability to travel is facially objective criteria, Tellez was given full discretion to choose the criteria on which to select an employee to terminate. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002) (explaining that a termination based completely on subjective criteria can show pretext). He chose the ability to travel and geographical distance from work sites as those criteria. Doc. 37 at ¶ 129. Tellez also testified that he only considered Schowgurow for the reduction in force. Doc. 37 at ¶ 128. Schowgurow has produced evidence suggesting that Black Box knew her back condition directly caused her inability to travel to client sites on prior occasions. Doc. 37 at ¶ 150. This is significant because Black Box claims that the primary reason it fired Schowgurow was her refusal to travel. Doc. 37 at ¶ 151. Although the criteria Tellez identifies could be a business judgment outside of judicial review, Schowgurow has produced evidence that could allow a factfinder to reasonably find that Tellez's stated criteria is pretext for discrimination. *Beaird*, 145 F.3d at 1169.

Considered separately and without regard to the bigger picture, Schowgurow's evidence might not indicate pretext. But the inquiry requires consideration of "the totality of such circumstantial evidence." *Beaird*, 145 F.3d at 1174. While Black Box may be correct in forecasting that a jury will find in its favor, Schowgurow has identified evidence that, when taken together, may cause a reasonable jury to question Black Box's explanation. The jury must therefore be the arbiter of

10

whether Black Box's reasons for terminating Schowgurow were mere pretext.

### III

For the foregoing reasons, Black Box's Motion for Summary Judgment, Doc. 34, is DENIED.

It is so ordered.

Date: March 3, 2025

        s/ Toby Crouse
Toby Crouse
United States District Judge